UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VANESSA JEFFERSON,

       Plaintiff,                     CIVIL ACTION NO. 16-10167

   v.                               DISTRICT JUDGE TERRENCE G. BERG

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

REPORT AND RECOMMENDATION

Plaintiff Vanessa Jefferson seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to Social Security benefits for her physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 19). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.     RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **GRANTED** and Defendant's Motion for Summary Judgment (docket no. 19) be **DENIED**. This matter should be remanded for further discussion of

Plaintiff's credibility and further analysis of her medical record and complaints as discussed herein.

## II. PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on January 15, 2013, alleging that she has been disabled since January 11, 2012. (TR 15, 76, 158.) The Social Security Administration denied Plaintiff's claims on May 7, 2013, and Plaintiff requested a *de novo* hearing. (TR 15, 84.) On June 12, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Lawrence E. Blatnik. (TR 27-62.) In a June 20, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing past relevant work. (TR 20.) The Appeals Council declined to review the ALJ's decision (TR 1-5), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court. (Docket nos. 15, 19.)

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 15 at 6-9) and the ALJ (TR 18-20) each set out a detailed, factual recitation regarding Plaintiff's medical record and the hearing testimony. Defendant also discusses relevant portions of Plaintiff's medical record and hearing testimony. (Docket no. 19 at 9-14.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record, with one exception relating to an x-ray taken on Plaintiff's hands in May 2014, which is discussed below. (*See* docket nos. 15 at 11, 19 at 11-12; TR 19) Therefore, the undersigned incorporates the factual recitations by reference. Additionally, the undersigned

will include comments and citations to the record as necessary throughout this Report and Recommendation.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that that Plaintiff had not engaged in substantial gainful activity since the date of her application, and that she suffered from the following severe impairments: degenerative disc disease (DDD) of the lumbar spine, osteoarthritis, hypertension, and hydronephrosis of the left kidney. (TR 17.) Next, the ALJ found that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ then found that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant can lift or carry 20 pounds occasionally and 10 pounds frequently. In an eight-hour work day, the claimant can sit, stand or walk all for at least six hours. She is limited to never climbing ladders, ropes or scaffolds; can only occasionally climb ramps or stairs, or bend, twist, or turn at waist; can do frequent handling or fingering with either hand; must avoid all exposure to dangerous or unprotected machinery or work at unprotected heights; and can never use air, power, torque, pneumatic or vibratory tools.

(TR 17-18.)

The ALJ questioned a qualified Vocational Expert (VE) regarding whether there would be any jobs available for a person with Plaintiff's RFC. In reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing her past work as a small parts assembler. (TR 20.) The ALJ also noted the VE's testimony that, even if the RFC was further restricted to include a requirement that Plaintiff change position every 30 to 45 minutes, there would still be a significant number of other jobs available to Plaintiff, such as an interviewer,

information clerk, and office clerk. (*Id.*) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act since January 15, 2013; the date Plaintiff's application was filed. (*Id.*)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)

(noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner]

(a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits or remanded under sentence four because (1) The ALJ "erred in not finding degenerative joint disease of the hands bilaterally to be a severe impairment," and (2) the ALJ "erred in his credibility determination." (Docket no. 15 at 10, 15.) Because the ALJ's assessment of Plaintiff's credibility appears to have influenced his decision regarding the severity of Plaintiff's degenerative joint disease (DJD) of the hands, and because undersigned finds error in the ALJ's credibility assessment, the undersigned will address the credibility assessment first.

### 1. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff contends that the ALJ failed to properly credit her allegations of limitations related to her physical impairments. Specifically, Plaintiff argues that to the extent the ALJ found that her allegations lacked credibility, he improperly relied only on an eight-year-old shoplifting conviction and an allegedly "spotty work record." (Docket no. 15 at 13-14; TR 19.) Defendant contends that the ALJ "thoroughly discussed the evidence in support of his credibility determination, including Plaintiff's daily activities, her complaints of pain, and her past work

history, in addition to summarizing Plaintiff's minimal treatment record and the opinion evidence of record." (Docket no. 19 at 14.)

An ALJ's credibility determination is to be afforded great weight. *Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.[1] "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2),

---

[1] SSR 96-7p was superseded by SSR 16-3p. SSR 16-3p eliminates use of the term "credibility," from regulatory policy, to "clarify that subjective symptom evaluation is not an examination of an individual's character," and to "more closely follow . . . regulatory language regarding symptom evaluation." SSR 16-3p, *available at* 2016 WL 1119029, at *1 (March 16, 2016). SSR 16-3p took effect on March 16, 2016, well over two years after ALJ Fernandez issued her decision in this matter, and therefore it does not apply here. *See Murphy v. Comm'r*, No. 1:15-cv-126, 2016 WL 2901746, at *8 n.6 (E.D. Tenn. May 18, 2016) (citations omitted) (concluding SSR 16-3p should not be retroactively applied).

416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

In his opinion, the ALJ states:

> After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible, for the reasons explained in the decision. Thus, [Plaintiff's] allegations regarding the need to change position frequently and frequent bad days (estimated at three or four per week) where she stays in bed all day are not well supported by the medical evidence of record, and are found not fully credible. A spotty work record and past criminal record also detract from her credibility. While [Plaintiff] has significant restrictions, as a result of her various impairments, based on my review of the medical record I conclude that her restrictions do not exceed those included in the above residual functional capacity.

(TR 19.)

Although the ALJ mentions that Plaintiff's testimony is not entirely credible "for the reasons explained in the decision," he does not set forth those reasons, other than mentioning Plaintiff's criminal conviction and her "spotty work record." Defendant's characterization of the ALJ's decision is inaccurate.

First, while the ALJ discusses Plaintiff's allegations regarding her activities of daily living, he does not make any findings or independent observations on the subject, or discuss how Plaintiff's activities of daily living affect his credibility assessment. His discussion is limited to the following:

8

> [Plaintiff] is a 53-year old female who lives in a house with her family. . . . [Plaintiff] reports that it takes her longer to tend to her personal care and adds that she requires assistance caring for her hair. She also states her limitations prevent her from cooking. [Plaintiff] reports that she does little in the way of house and yard work. She is able to drive, but chooses not to [because] she believes her condition and side effects of her medications affect her ability to drive safely. She indicates that her condition further limits her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, use her hands, and complete tasks.

(TR 18.)

Similarly, while the ALJ lists Plaintiff's medications and mentions that her hypertension is "reportedly controlled," he does not otherwise describe Plaintiff's treatment, or state whether he relied on a lack treatment for Plaintiff's other impairments as the basis for his adverse credibility determination. (TR 19.) Defendant cites to exhibits in the record showing that Plaintiff was treated with prescription medication, and argues that "such modest treatment is inconsistent with a finding of disability." (Docket no. 19 at 16.) However, it is the ALJ's rationale that is on review, not Defendant's; thus, Defendant's post-hoc rationalization is inapposite. *See Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at \*6 (E.D. Mich. June 18, 2012) ("[I]t is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's.").

At certain points in his decision, the ALJ does describe the location of Plaintiff's complaints of pain (the second credibility factor), but only to compare it to the objective medical evidence, for example: "despite [Plaintiff's] complaints of left hip pain, x-rays showed no fracture or bone lesion in that hip or evidence of significant arthritis in either hip," (TR 18); and "[Plaintiff] alleges pain in both hands that affects her gripping, grasping, and fine manipulation abilities. However, March 2013 x-rays reveal no evidence of acute fracture, dislocation or

9

subluxation. Neither is there acute osseous or articular abnormality identified." (TR 19.) As set forth above, the Regulations specifically state that the ALJ is not to reject Plaintiff's "statements about the intensity and persistence of . . . pain or other symptoms or about the effect . . . symptoms have on your ability to work solely because the available objective medical evidence does not substantiate [the] statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Instead, the ALJ is required to consider evidence related to the seven factors listed above. *Id.* While "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis," *Pratt v. Comm'r*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases), in this case, it isn't clear from the ALJ's decision that he gave consideration to any of the factors other than the location of Plaintiff's complaints of pain in her hand and left hip.

As Defendant points out, the ALJ does mention the opinion evidence from Steven Garver, P.A., and Horace J. Davis, D.O., Plaintiff's treating physician. However, he assigns "little weight" to the opinion of Mr. Garver, because it is "not consistent with, or supported by, the medical record; appears to overstate the extent of the claimant's limitations; [and because] Mr. Garner is not a medical professional whose opinions are entitled to weight under applicable regulations." (TR 19-20.) He also rejects Dr. Davis's opinion regarding Plaintiff's "lifting, walking, and foot/leg control restrictions" as "not consistent with, or supported by, his treatment records or the other medical evidence of record." (TR 19.) The only opinion evidence to which the ALJ assigns any weight is Dr. Davis's opinion from March 2013 that Plaintiff has "no limitations in grasping, reaching, pushing/pulling or fine manipulation." (TR 19.) While this specific opinion of Dr. Davis may provide some limited support for the ALJ's assessment of the

10

credibility of Plaintiff's complaints about her hands, it says nothing about the credibility of Plaintiff's complaints regarding her other impairments.

This leaves Plaintiff's shoplifting conviction from 2006 and her allegedly "spotty work record." The criminal conviction was eight years old at the time of the hearing, and Plaintiff has no other criminal history beyond traffic violations. (TR 34.) A review of Plaintiff's earnings record does reveal alternating stretches of employment and unemployment, as the ALJ found. (TR 164-76.) The undersigned finds, however, that in the absence of a more fulsome discussion of the credibility factors described in the Regulations and set forth above, these are insufficient grounds for discounting Plaintiff's credibility.

Even if the ALJ's decision is ultimately supported by substantial evidence, his decision is not sufficiently specific to make clear the reasons—beyond Plaintiff's criminal conviction and work record—that he discounted Plaintiff's complaints regarding her impairments. And without that rationale, the undersigned cannot determine if the ALJ properly considered all of the evidence before him. Therefore, Plaintiff's Motion should be granted, and this matter should be remanded for a proper discussion of Plaintiff's credibility.

2. *The ALJ's Assessment of Plaintiff's DJD of the Hands*

Plaintiff also argues that the ALJ committed error in not finding her bilateral DJD of the hands to be a severe impairment. (Docket no. 15 at 10; (citing TR at 17, 19).) Regarding this impairment, the ALJ found:

> [Plaintiff] alleges pain in both hands that affects her gripping, grasping, and fine manipulation abilities. However, March 2013 x-rays reveal no evidence of acute fracture, dislocation or subluxation. Neither is there acute osseous or articular abnormality identified. Treatment notes indicate [Plaintiff] experiences some degenerative disease in the first carpometcarpal joint of each hand (18F). Nevertheless, the claimant's treating physician, Horace J. Davis, D.O., does not find her significantly limited by this impairment as he indicates in his March 2013

11

> medical report that she has no limitations in grasping, reaching, pushing/pulling or fine manipulation (19F).

(TR 19.) Plaintiff points out that the x-ray the ALJ references was actually taken in May 2014, approximately one year after Dr. Davis made his treatment notes. While Defendant describes the ALJ's mistake as a "scrivener's error," (docket no. 19 at 12), the undersigned finds it to be significant. The May 2014 x-ray evaluation, performed by Dr. Waseem Ullah, states that "[t]here is moderate to severe hypertrophic DJD first carpometcarpal joint" in both of Plaintiff's hands. (TR 385.) The ALJ notes the diagnosis, but then discounts the severity of it based on Dr. Davis's treatment notes, which the ALJ apparently believed were written contemporaneously with the x-ray. The fact that Dr. Davis's treatment notes were actually prepared approximately one year prior to the date the x-ray was taken seriously undermines the ALJ's analysis of the x-ray evidence, especially in light of the degenerative nature of Plaintiff's disease.

Defendant acknowledges the ALJ's error regarding the date of the x-ray, but argues that other evidence in the record nevertheless supports the ALJ's decision, including the May 2014 opinion of Mr. Garver that Plaintiff does not have "significant limitations with reaching, handling or fingering." (TR 357.) However, the ALJ does not discuss or expressly rely upon Mr. Garver's opinion regarding Plaintiff's hands. Indeed, the ALJ explicitly rejects other aspects of Mr. Garver's opinion, and generally notes that, "Mr. Garver is not a medical professional whose opinions are entitled to weight under the applicable regulations." (TR 20.)

Defendant also argues that, because the ALJ "specifically discussed Plaintiff's allegations of hand pain and the evidence related to her joint disease in determining her RFC," any error in not finding these impairments severe would be harmless, citing *Fisk v. Astrue*, 253 Fed. App'x 580, 584 (6th Cir. 2007). (Docket no. 19 at 13.) In *Fisk*, however, the Sixth Circuit found that when the ALJ assessed Fisk's RFC, the ALJ properly "accounted for Fisk's claim of coronary

12

artery disease," by "stating that Fisk 'underwent extensive cardiac evaluation that was negative for significant coronary disease,'" and "considered Fisk's diabetes, explaining that 'the record did not document end organ damage secondary to . . . diabetes.'" *Id.* There is no discussion of any error by the ALJ in interpreting the evidence on which those findings were based. Here, however, the ALJ made a clear error in interpreting the evidence on which he based his decision regarding the severity of Plaintiff's hand impairment.

Moreover, the undersigned has recommended remand for a proper discussion of Plaintiff's credibility; a change in the ALJ's credibility determination could also affect the ALJ's decision regarding whether Plaintiff's DJD of the hands is a severe impairment. Therefore, the undersigned also recommends that this case be remanded for a proper consideration of the evidence regarding Plaintiff's hand impairment.

## VI.    CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **GRANTED** and Defendant's Motion for Summary Judgment (docket no. 19) be **DENIED**. This matter should be remanded for further discussion of Plaintiff's credibility and further analysis of her medical record and complaints as discussed herein.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 9, 2017        s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 9, 2017        s/ Lisa C. Bartlett
                              Case Manager